This case is Smith v. Garland. Good morning, your honors. May it please the court. My name is Lily Gutterman. I'm a law student representing petitioner, Mr. Lincoln Smith. My colleague, Aiden Langston, will do the rebuttal. Mr. Smith has been in this country since the age of eight as a lawful permanent resident. His family and two young daughters are both U.S. citizens. The sole issue before the court today is whether Mr. Smith is eligible to apply for discretionary relief from deportation or if he's barred from doing so because his second degree offense under New Jersey section 7.1 is an aggravated felony. As this court has already made clear, Mr. Smith's conviction can only be an aggravated felony if it's divisible by drug. It remanded to the BIA to determine that in the first instance, and the agency erred at each stage of its analysis. The BIA misread the statute, it misunderstood the New Jersey cases that it cited, and it ignored this circuit's case law. At its core, this is a question about how New Jersey designed its drug-free zone law and whether it requires prosecutors to prove the type of drug when it has no bearing on the possible sentence. There's nothing in the text or case law to suggest that it does. Can I just ask, the statute says any person who violates subsection A, this other statute, by distributing, dispensing, or possessing with intent to distribute a controlled dangerous substance while within the 500 feet commits a second degree offense. Doesn't the first part of our provision direct us back to the general drug distribution statute? And shouldn't we be asking whether that statute is divisible? Because this one seems to presuppose that it's violated. Yes, Your Honor. So 7.1 refers to a violation of specifically 5A, and it's specifically referring to the prohibited conduct in subsection A, which you can see on page 20 of our brief at the bottom also simply refers to a controlled dangerous substance. It's just the generic elements of possession with intent to distribute. But nobody's ever convicted of just subsection A, right? You're convicted of the whole statute. So we know from the jury instructions, the model jury instructions that the BIA cited, that New Jersey says there needs to be a violation of 35-5 before you can show a violation of 7.1, right? So that means that somebody is charged and convicted of a violation of 35-5 before they're convicted of 7.1. So there is going to be a determination by a jury of what the substance was. I don't believe that the jury instructions require a violation of the entire section 5 of section 5 in order to have a violation under section 7.1. The statute simply refers to subsection A, and which we cite in our brief, the New Jersey's official commentary to the statute, which the New Jersey Supreme Court- So in order for you to find a defendant guilty of this count or the indictment, the state must first prove beyond a reasonable doubt that the defendant knowingly or purposefully, or purposely, excuse me, possessed with intent to distribute a controlled substance or a controlled substance analog. As I have previously instructed you, the elements of distributing a controlled dangerous substance are, and one is, you know, the drug, right? So it does say before you can be convicted of 7.1, the jury has to find that he's convicted of 35-5, and an element of that is possession of a specific substance. Yes, so it does- I know you have an argument why we shouldn't look at the jury instructions, but it does seem to be what the jury instructions say. The jury instructions require that there is, in fact, a controlled dangerous substance present, but it doesn't require that the jurors agree as to precisely what that substance was, and that's what this court held in Harbin. Doesn't it? I mean, so we have these New Jersey cases that say that if you possess cocaine and heroin on the same occasion, you've actually committed two crimes. So if they charge him with possessing heroin, if the jury- some of the jurors think it's cocaine and some of the jurors think it's heroin, can they convict after they've been told that you need to find that he had this particular substance? So, yes, in the New Jersey case law, for instance, we cite the case State v. Gibson, and in State v. Gibson, there is a conviction under 5 for heroin or cocaine, and the jurors- That's right. Yes. I mean, we'll hear from the government about that, but I guess they say that actually he's being charged with different crimes in that case. But you're saying that actually under New Jersey law, the state does not need to prove what the substance was. Precisely. So if they have a lot of evidence that actually he had a lot of drugs and it's not clear what the drugs were, he can still be convicted under 7.1. Yes, yes, a defendant still could. It makes sense of the cases that say that actually you can be charged with multiple crimes if you could show that on the same occasion he possessed both heroin and cocaine. So if they were interchangeable, shouldn't it be the case that that's only one crime? Yes, so we don't contest that there can be two separate convictions when a defendant simultaneously possesses more than one drug. But that's not because each drug creates its own element or its own separate crime with its own distinct elements. It's because the defendant has twice committed the same crime of possessing with intent to distribute a controlled dangerous substance. You just said a moment ago that actually it doesn't matter what he's possessing. So if half the jurors think it's cocaine and half the jurors think it's heroin, then he's committed the crime. But then you're saying if all the jurors think he had heroin and cocaine, then he could be convicted twice of that offense. It all depends on what it is that the prosecutor charges, and it's this leeway that prosecutors— in this context, if in a single act a defendant is charged with having turned over a small amount of cocaine and a small amount of heroin, if New Jersey case law actually says that can be two separate counts, why doesn't that go to suggesting whether the nature of the controlled substance is an element? So what it shows is that you have two distinct factual predicates. You're committing the same crime twice, and the reason that we know this, for instance, is— so there's a case, State v. DeCastro, in the brief as well, and there are two counts under 7.1 in that case. One is for BZP and or oxymorphone. One is for heroin and or cocaine. All the prosecutor needed to show to have two counts there was that there were two distinct types of drugs present. They didn't need to prove the precise drug that was actually underlying each count. That's the distinction there between something being considered a separate act that can be punishable under the statute versus something that needs to be proven beyond a reasonable doubt. And so if I can just jump in, is what you're arguing is that the unit of prosecution analysis is not necessarily the same as an elements analysis, that you can have incremental, like you can have a 924C count. You can be charged multiple times if you have multiple guns, for example. But that is not necessarily the same as saying that they're different elements. Precisely, Your Honor. That's exactly what we're— It's more of an increment of punishment. Precisely, yes. We're saying that it's understood as two different acts that can be punished multiply, and that does not bring in any double jeopardy issue here because it's still the same statute. It's just how the legislature defined the unit of prosecution. So you're saying that somebody could be charged of one count of Violent 7.1 that says he had drug A or B and another count of 7.1 that says he had drug C or D. But the prosecutor could have also decided to bring four counts for four different crimes, A, B, C, and D. Is that right? That's how New Jersey law works? Yes, it is, and it would depend potentially on the evidence that the prosecutor has available to them. So that does suggest that the drugs are not actually interchangeable, right? So if the prosecutor brought the charge that says four counts, drugs A, B, C, and D, he would have to show that the defendant had drugs A, B, C, and D, and if the jury was convinced that he only had A, B, and C, he would be acquitted of the D charge, right? Yes, he would if the prosecutor chose to bring it that way. But the point is what is an element is what has to be proven in every single case. So while in that case they may have chosen to bring each of them as separate counts, there are other cases where they might charge multiple drugs in the alternative, and that's what makes it not an element. Can I just go back to the government relies on the State v. Ivory, the Supreme Court of New Jersey case, and it's just language I understand in that opinion, but the opinion says that the first step in determining whether the provision has been violated is similar provision to ours within 500 feet, is whether 35-5A has been violated. And you're saying that when I look at 35-5A and I look at the B subsection, and I know you say it's not referenced in the statute, but to prove a violation of 35-5A, which goes on to list in subsection B a certain amount of the methamphetamine and weight, I would think you would have to show to a jury that it was methamphetamine and weight. So isn't it the case that 35-5A does contemplate the proof of a particular controlled substance if you look at that statutory provision as a whole? So 5A is charged alongside 5B. And what that means is that at the outset of a prosecution, the prosecutor is going to charge 5A and they're going to charge the relevant subsection of 5B. And that's what adds those additional elements of drug type or quantity or whatever it is that's outlined in that particular provision. That's why when they go to trial or the defendant is pleading, we would have to plead to those specific elements. But 5A on its own does not have those requirements. I mean, we have his indictment. He's not charged separately with a violation of 5A or 5B. He's charged with possession with intent to distribute a controlled dangerous substance in the third degree, which implies that they went straight to B because it's B that gives you the degrees, right? There's no separate charge that he had possession in general and then also a separate charge for possession in the third degree. Are you referring to the 5 charge, Your Honor? Yeah, count 5. So I believe that that count would also refer to the provision of 5B that's being charged as well. So it would have to include. It says a crime of the third degree contrary to the provisions of 5A1 and 5B3. So it mentions both of those provisions, but it's one count, right? It's one count, but in order to. Could you have a freestanding charge of just 5A? I don't believe you could, and it's what's adding the 5B3 provision there that adds those additional elements that are being charged, which is drug type and quantity. So your argument is that the statute only cross-references 5A, and 5A doesn't make note of the different substances. But the question was, well, you can't ever just have a conviction for 5A because you need to show what the substance is in order to get a conviction of 35-5. So anybody who's going to be convicted of 7.1 is going to be charged with having a particular substance, and that's going to be proven. What the statute of 7.1 says, it cross-references to a violation of 5A, but it does not require a conviction under 5, which would require certain penalty provisions of 5B to also be violated. And I think it's also worth noting that some of the provisions of 5B don't even specify the type or amount of drug. I'll tell you that in a 35-5A prosecution, or 35-5, let's leave off the subdivision for a moment, it's going to be charged, if it is charged under those first set of provisions, it's an element. You've got to prove methamphetamine and a weight for that prosecution. There's a wraparound bottom two provisions that just say, if you don't specify any other control, it's also a violation to distribute any other controlled substance on the schedule. And then it starts to look more like the New York law, and you could say, well, maybe those lower subsections, it's not an element. But the overall thrust of 35-5 seems to me, and maybe this doesn't answer the question with regard to our provision, but that seems to contemplate a lot of prosecutions where the substance is an element of the crime. I think under 5, there are the different subsections, there are requirements to prove the type of drug. So you're agreeing with me that under those provisions, it would be an element, which may not answer our provision, I understand. I would agree, depending on the subsection of B that is charged, potentially. Or that it could be that the subsections of B are the distinct elements. There could be divisibility in 5, but that would be due to what is included in B. And that would map directly onto the way we think about 841, a federal narcotics charge, right? The idea is that you have 841A, which says, thou shalt not possess with intent to distribute. And then in B, we have various penalty provisions. So for some of them, if you want to prove X quantity of heroin, that's an element, because you're going to get an enhanced penalty. But for others, there is sort of the wraparound, the default penalty of 0 to 20 years, where you don't have to specify, and our courts have always held federally, that controlled substance, the identity of a controlled substance is not an element. However, it does for 841A. But it is become an element if you happen to charge one of the enhanced penalties in B. And I understand your argument to say that basically, New Jersey happens to work the same way. Yes, exactly, Your Honor. It's exactly similar to this court's opinion in Ricana, where multiple synthetic strands of marijuana are charged in the alternative, and because it falls under that statutory maximum, 841B1C, I believe it is, it's fine that it's not specified because it's not an element of that offense. So if he had gone to trial and was convicted of 35-5 and also 7.1, there would be an aggravated felony because 35-5 would be divisible. Because the substance here was cocaine, and there would be this provision of B that applies to cocaine. Depending, I wouldn't say that because I haven't done the analysis on Section 5 and whether or not I would say that it was divisible. If one of the B elements had been charged and called for an enhanced penalty based on the identity and quantity of the drug. I don't know if that's the hypothetical that Judge Menasche has in mind. That could be true, that that would be an aggravated felony. But what we're looking at is 7.1, and that's the only offense that Mr. Smith pled to. So in the context of the RICO statute, that we look at the predicate offenses to determine whether it's a crime of violence, right? Why shouldn't we do a similar analysis here if there's a predicate for 7.1 and the predicate offense is divisible and it's cross-referenced in the enhanced offense? Why shouldn't we say that cross-reference incorporates the predicate offense? Because 5 is not a predicate or lesser-included offense of 7. Well, you always have to violate 5 in order to violate 7, right? No, you have to engage in the prohibited conduct in 5A, but you could not be convicted under- But the statute says you have to violate, right? 5A. Any person who violates subsection A. But I understand your argument to me, though, but it only says you're violating 5A. It is not also importing the additional enhanced penalties of B. So to the extent that if one were to charge enhanced penalties under B, then yes, those would be the predicate offense, say if they were predicates for a RICO-type thing. But here, you're not incorporating B. You're not incorporating the enhanced penalties, and therefore, the drug type and quantity has not been converted into an element for purposes of it. Because that bit is not being cross-referenced or incorporated by reference. Exactly, Your Honor. I'm sorry for that argument, but I guess my question is, so does anybody ever charge just with 7.1 and not charge with 35.5? I believe that they absolutely could be. I don't have exact examples of that, but I think that that is right, that they could just be charged with 7.1. For instance, if they couldn't prove- In order to be guilty of 7.1, there has to be a predicate violation of 35.5. The elements of that offense are, and the first one is the substance. Is that a misstatement of New Jersey law? I don't believe it says that you have to violate a predicate offense in the jury instructions. It simply states the elements of the crime, which also the New Jersey- If you have this kind of indictment, meaning 7.1, the state must first prove beyond a reasonable doubt that the defendant knowingly or purposefully possessed with intent to distribute a controlled dangerous substance. That's 35.5, right? So the state must first prove beyond a reasonable doubt that the defendant violated 35.5. That they engaged in the conduct of 5A. They violated 5A by engaging in the prohibited conduct of 5A, and 5A simply refers to a controlled- Isn't it even a bigger problem for your argument? Because then it says the elements of distributing a controlled dangerous substance are, and number one is the substance. It would be a stronger argument, I would think, if you're just saying, well, it's talking about 35.5, and for 35.5, you have to prove the substance. So the substance doesn't have to be proven. That's not what's shown by this here. What has to be proven is that they, in fact, have a- That, in fact, what is in evidence is a controlled dangerous substance. But as we've discussed, it could be multiple drugs alleged in the alternative. Jurors could disagree as to what that precise drug was. And that is what we see in Harbin, that jurors could disagree simply because there's a blank to specify controlled substances. Because it could be multiple in the alternative, and we see that in Stacey Gibson, that they actually do that. So you're arguing that the blank to be filled in in the jury instructions is not something that they have to be unanimous about. They just have to be unanimous about whatever the thing is that's in evidence has to be a controlled substance. And again, this is, I assume you're arguing the exact same rule that New Jersey has adopted the same rule that the federal courts have adopted for 841. Yes. That whatever it is, whatever this thing is that the person you believe possessed or distributed or whatever, is in fact a controlled substance. That's how we should read that first element. Yes, that's the element. You fill in a fact or facts that could be used to fulfill that element. But the element is the presence of any controlled dangerous substance. So that's the distinction there. And we also see in the New Jersey case law that you can amend an indictment from one type of drug to another without re-indictment. And that's because it's not an element. And the court expressly says that. So all of these point to the fact that the text simply says a controlled dangerous substance. And there's nothing in the case law to overcome that the text is plain that it does not require the distinct substances be proven. So unless there are further questions, I see I'm way over time.  Here's the adversary. May it please the court. My name is Craig Newell and I'm here on behalf of the Attorney General. Mr. Smith is statutorily ineligible for the relief of cancellation of removal because his New Jersey conviction for possession with intent to distribute cocaine within 500 feet of public property constitutes a drug trafficking aggravated felony. There are two main issues in this case. It's how we should go about conducting the categorical approach and then whether this New Jersey statute is divisible by the type of drug. I'll address the divisibility first as that was the primary discussion with Mr. Smith's counsel. So both the statutory structure of this Section 7.1 offense and the New Jersey case law confirm that the type of controlled substance is an element under the Supreme Court's conception of element in MAFIS. So you first look at the statute and it does say that you need a violation of Section 5A and then you take out your tape measure and you see if it was in 500 feet of public property. That's confirmed by the New Jersey Supreme Court's ivory decision. Now, a violation of Section 5A, the type of controlled substance is an element of that crime. And the question is how do we figure that out? Now, Mr. Smith does not want us looking at the other parts of Section 5. But the way we determine whether a 5A violation, I'm sorry, whether the controlled substance is an element of a 5A violation, it's informed by those punishment provisions and it's informed by the New Jersey case law. So you would agree with me that your argument that the existence of Section A, which tells you the prescribed conduct, and B, which has penalties based on drug type and quantity, your view that you can't separate A and B and therefore because B exists, A is always and everywhere going to have drug type as an element, that's the opposite of what we've concluded federally for 841, right? Controlled substance, the identity of the controlled substance is settled. It's not an element under 841. So I guess I'm wondering why is it? I understand they may look at other things like jury instructions or New Jersey courts could come up with a completely different view. But I guess I'm curious whether or why it is, in your view, that this existence of sort of the offense conduct in A and the penalty provisions in B mean that when somebody cross-references only A, A on its own by definition must necessarily have the identity of the drug as an element. Why is that a necessary inference in New Jersey statute on its face but not with respect to the federal statute 841? Okay, taking that very narrow, just looking at why it is in the case. If you look at section 5, I believe it's subsection C. And it says how that if the weight, the quantity and quality of the drug, whether that matters for enhancing the punishment, that has to go to the trier of fact. I don't believe there's that same equivalent provision under 841. But under the constitution, it would be. And that's why differing punishments under MAPIS are an element. Now, differing punishments, just the fact of the differing punishments. Yes, some give you a higher one and some give you a lower one, but that is sufficient. Now, the additional point to make- I'm reasoning from 841 because that's what I'm more familiar with. Right. A violation of 841 is going to have an extra element. It's not like the element's changed, but it has an extra element when you have the enhanced penalties under B, right? Which is the identity and the quantity of particular types of drugs. And I guess I'm still wondering why is it that that's not the same thing here? Why is it not- When it's structured the same exact way that you have the conduct as prescribed in A, and then you have enhanced penalties that only apply to certain quantities and types in B, why is it not that when you import B, you get an extra element you've got to prove, but when you don't import B, you don't have an extra element to prove? When you don't import B. I think it goes back to the fact that we're looking at a different analysis. We're using the term elements, and that is rooted in criminal law. But Mathis has set up this-the Supreme Court of Mathis has set up this structure of how to do this divisibility analysis. And different- Rooted in criminal law. I mean, it's not a different analysis because we happen to be in the immigration context. Oh, no, I mean- We have these same issues come up in sentencing in terms of Armed Career Criminal Act and career offender, right? The categorical analysis is the same no matter where we're applying it, right? Right, I guess I apologize for my lack of clarity. I mean, the difference is that we're doing the categorical analysis as opposed to doing an actual whether someone has been proven of having committed this crime. And that's why we can look at additional things such as the case law. Could somebody be convicted of just 35-5A? Your argument was that it's impossible to just be convicted of 35-5A. That any conviction under 35-5 is always going to include one of the quantity of the substance and the specific substance. Yes, and that is mirrored in the jury instructions for both 5 and the 7.1 and the school one in 7. So even though it's structured that there's a 35-5A and then the substances are in 35-5B, you're saying the way New Jersey law works is you never just violate 35-5A. You always have to prove the substance, is that right? That, from my overview of the case law, I've seen it many times and it specifies it's a 5A and then it's B whatever because it's cocaine. Can there ever be a charge that just says 35-5A? I don't think so. Well, in other words, if they didn't allege anything in B, so if the charging document only alleged A, right? Would that only outline the elements that are set forth in A? And therefore, the penalty that the court would have to impose upon a conviction would be whatever the lowest one possible is under B. Well then- Meaning B doesn't add any elements to the A. But it would then be one of the drugs that falls into the bottom level punishment of it, yes. Right, would you naturally default to whatever the least punishment is? Yes, correct. But I think- B does provide for all prosecution, apply to all prosecutions under A. Because if you go to the lowest level, it's any other controlled substance classified in these schedules is guilty of a crime of the third degree. Those wraparound provisions cover the universe. Right, and that's why I think the differing punishments, it is strong evidence but it only gets you so far. That's why I've got to move to the next source of authoritative state law. Can I just ask before we move on, the fact is that the cross reference is only to A, meaning 7 is not importing any of the B punishments because it provides its own punishments. So it doesn't need to pull the B punishments because it says that if you do whatever, it's a second degree or a third degree, right? It's got its own, which has some default statute. I don't know what the section number is in New Jersey law that says it's a second degree offense has these range of punishments, third degree have these range of punishments. So it makes sense not to import the punishment structure if it's got its own punishment structure. What I'm arguing is not to import the punishment structure but to decide what are the elements of Section 5A. And that's where we need to look at the- I'm sorry. What are the elements of Section 5A? So I can take it your argument is 5A, you can never be convicted just of 5A. Any indictment always has to say that you fall into one of the B provisions, right? Yes. Can somebody charge somebody just with violating 5A and not specify the substance and ignore the B provision and just say, well, I'm just going to seek the lowest possible punishment? Is it possible to do that? Well, then it would specify the lowest possible- So it would still specify the B provision and you're saying you'd have to specify the substance, right? It would still specify the substance. I think this inquiry only gets us so far. And so what's the next step? The next step is to look- Right. Right. I'm sorry. That's okay. No, that is necessary to know. And I'm sorry to follow up, I think, to Livingston's point. We're still on the first step. Sorry about that. Is, again, just to come back to this analogy of 841, right? Which has the same wraparound, 841B1C, which basically says, and if you don't prove quantity or type or anything, well, you're back here in C. And so we have a situation like that federally with a wraparound default penalty provision in a separate B. And in that situation, the federal courts have said controlled substance, the identity or quantity is not an element. So I guess I'm asking, how is it that the presence of such a wraparound or default penalty provision in, I'm losing track of the number, 55B does give rise to that inference when we know it does not give rise to that inference federally with a similarly structured statute? With the, it gives rise to the inference insofar as it doesn't for all those other drugs, the cocaine and such. Right, the wraparound doesn't. And we know that there is a wraparound in B1C federally. And when that applies, we have held that the identity of the drug is not an element. So I guess I'm trying to understand why your argument, I think, is based on, because there's an existence of a default at the end. If you don't have this much cocaine or this much heroin, and you have whatever the lesser, the least amount is, then you're in the bottom category. Because there is a bottom catch-all category, I think you're arguing, because the schedule is comprehensive, it covers everything from these great quantities to miscellany, then we know the identity of the drug is an element. Why is it that when the same exact thing as how the federal drug statute is structured, we have drawn the opposite inference and said drug controlled substance is not an element, unless you're in one of the enhanced penalty provisions. But when you're in the drop box at the bottom, you're not dealing with an element, the identity. You would agree with me, that's how- I totally agree. And I think where the inference for the categorical approach is coming from is that, look, there's this differing punishments for all those other, the non-catch-all drugs. And differing punishments make it an element. But how do you know you're in the catch-all without knowing what that substance is? You need to know what that substance is. And I see the concern here. Let me just, I think maybe this is what you were saying before and I didn't catch it. Are you saying that the definition of an element, we're talking about something different, about what we mean by asking whether something is an element, depending on whether we're talking about the divisibility analysis of the categorical approach, or whether we're just in a criminal case inside it? From the way it's laid out in Mathis, there is this difference. And I think, if I can, the- What is that difference? Yeah, what is that? The difference is this. So in Mathis, the Supreme Court says, okay, an element is what needs to be proven to be convicted. Yes, that's the same as a criminal situation. And what is a means? A means is something that is brute facts, has no legal consequence or effect. So here, the type of drug, whether it's under 5A or whether one's 7.1, and regardless of the particular type of drug, it does have a legal effect and consequence. And that is the fact that if you're simultaneously possessing two different drugs, that's two convictions, that's two sentences. It has a legal effect because of the double jeopardy in the merger case law. The New Jersey Superior Court Appellate Division's decision in Jordan lays this out. It says the legislative intent of five is that each particular drug creates a separate crime. And you know this because New Jersey set out- It says there are separate crimes. So we have New Jersey case law that say that. We had heard from opposing counsel that you could still charge somebody with heroin and or cocaine. So it can't be that that's an element of the offense, the identity of the substance. It could just be that you have different counts of the same offense. Why isn't that an answer to what you're saying? It's not an answer because the charging, we're talking about two different ends of the criminal proceeding. The charging is at the beginning. The charging, the case law in New Jersey about amending and the charging is all about making sure the defendant has notice. Now we're coming to the end where you're actually getting a consequence, being deprived of your liberty. And it says that these two different drugs can create two different crimes. So the charging relates back to the different punishments. And that gets you so far, but it doesn't get you to the end, and that's what the case law does. The case law- Let me ask you about the end. Yeah. At the end. Hypothetically, you have someone charged with four counts. Okay? A single episode, but they're charged with having drugs A, B, C, D. Okay. Four counts under New Jersey law goes to trial. And the jurors, half of them believe that the defendant possessed A, B, C, and D. The other half believe he possessed E, D, F, and G. Okay? They believe that there were four distinct drugs, but different from the four distinct drugs that the other half of the jurors- It seems to me that New Jersey law would say that the jury can return four convictions there. And there's no problem with that. Now, there's been no unanimity as to the element on- There has been a unanimity as the element, which is a distinct controlled substance. They may not be unanimous as to which. Maybe half of them think count one was heroin, and the other half think count one was cocaine. And that seems like it would be fine under New Jersey laws, as long as under count two they thought it was either fentanyl or molly or whatever, as you go down. As long as each of them thought that the four were distinct, you're fine. But again, you're not requiring the 12 to be unanimous as to the substance on each of the counts. That seems to me the way that New Jersey goes here. Am I wrong? You're saying that under New Jersey law, count one, they would all have to agree it was heroin or cocaine or whatever. Right, if count one is heroin and count two is cocaine, the jury couldn't switch them out. To be convicted of count one, you would need to show the cocaine. And that's why the jury's section says specify the controlled substance. So you're saying, in fact, if they're charged with four counts, drugs A, B, C, and D, and half the jurors think actually it was drugs E, F, G, and H, that person should be acquitted? Yes. I don't see how that, I mean, it just wouldn't come down to just these random drugs that the jury is thinking the person possesses. That happens all the time, right? I mean, that happens again in drug cases where parcel is delivered to defendant, right? Search warrant is executed, turns out to hold a whole load of cocaine. The defendant says, well, I didn't know it was cocaine. I thought it was heroin. That's my defense, right? Happens all the time, right? Or usually they'll say I thought it was marijuana because there's going to be lower penalties. So then there may be, you have to prove not only the identity of the thing, but you'll have to prove knowing possession. And so there may be a disagreement about the knowledge. And we've always said, well, it doesn't matter what he thought. As long as he thought it was a controlled substance, it didn't matter which it was, right? Whether it was heroin or cocaine or whatever. Now, they may need to be unanimous about the identity for other purposes, like quantity enhancement. But if you've got a B1, an enhanced penalty. But otherwise, you don't have to. However, the case that pops in my brain about this is one of the unpublished cases that I cite to that could be a decent example of this situation. The Cherry case, where the person was acquitted of, it was an instance where it was alleged that the person sold both heroin and cocaine to someone else. And he was acquitted of the heroin, but convicted of the cocaine. And he thought those should have been merged away. But the court said, the New Jersey Supreme Court said that they're mutually exclusive, relying on this line of case law from Jordan, that each separate drug creates a separate crime. And under Mathis, Mathis is saying, if it's a memes, it has no legal consequence. It has a legal consequence here, because it's leading you to having two crimes, I'm sorry, two convictions, two sentences. That's a legal consequence. And that's what the court should recognize here. It's the inverse of what happened in Harbin. In Harbin, this court, one of the primary reasons it found it indivisible and not an element, is because the New Jersey courts said simultaneous possession of two crimes, I'm sorry, simultaneous possession of two drugs, that's not multiple crimes. So on the side of the ledger in favor of saying it's divisible, you're saying we have these circumstances where two people have the same quantity of controlled substance. But one person has two substances. The other person has just one substance, but it's the same quantity. And one person is guilty of two crimes. The other person is guilty of one crime. And that means the substance has a consequence. The other side in the argument is saying, well, that just means that having multiple substances might have a consequence. But the substances can be interchangeable because somebody could be charged with count one, heroin and or cocaine, count two, I don't know, C and or D, two other drugs. So why doesn't that suggest it's not an element, if in fact maybe you disagree with the premise that New Jersey allows this, but does New Jersey allow for somebody to charge in the alternative that it's just one count in violation of 7.1 but not specify the substance? I think when it's charged in the alternative, and if you look at the cases that Mr. Smith cites for that fact, they still, like Ivory itself, there were multiple violations and it was charged like that. But he pled guilty to one violation with one drug. So you're saying when they charge heroin and or cocaine, they're actually charging two violations of 7.1? That's two crimes. I think if they ended up wanting to, if New Jersey prosecutors ended up wanting to get to convictions, they would have to amend the complaint. I think the charging only is the initial phase of it all. At the end phase of all, when the legal consequence attaches, the jury needs to be instructed of the particular drug in evidence, and that each of the particular drugs that are controlled under New Jersey law create a separate crime, create a separate conviction, and thus have a legal effect and consequence, making them elements under how- and say, we've put on evidence that this person possessed with intent to distribute X quantity of a controlled substance near a public building, and that substance is either heroin or cocaine. We know it's one or the other, but we can't prove which. They can't submit that to the jury because the jury can't convict on the basis of the substance. From my survey of the New Jersey case law, I have not seen that example. And the examples that have that and or are only about cases that deal with the up front issue, how you charge or amend the complaint. And you're saying that the cases that Mr. Smith relies on are guilty plea cases? They're guilty plea cases. We don't know all the other facts. The particular drug wasn't at issue. And some other ones are cited. If you look like the Summers case, the decision that they cite just says controlled substance. But if you look at the lower court decision, it says one controlled substance. And a similar one is similar decisions like that as well. Just one last question for me. If we're left utterly baffled as to what on earth New Jersey law says, because it seems like they probably have never had to think about it in the way that we now have to think about it for divisibility analysis. It's just never come up. And therefore, understandably, there's some fuzziness. Where does that leave us? If we conclude that we can't tell under New Jersey law, where does that leave us? If you can't tell. I, of course, believe you can. You have remanded it to the board previously, and the board has given you their answer. You are within your authority to certify to the New Jersey Supreme Court this question. But there is more than enough here. We have the statutory structure, and we have this case law. And this case law is not about the multiple convictions. There's no ambiguity in that case law. We have here the exact opposite of- What about the other case law that says about amending the indictment? It does explicitly say there's a seat versus Williams, I think. It certainly says that all it is is the changing of a fact, and it's not an essential element of the offense. And that's why you can change the substance in the indictment. What do we do with that? I agree with you that the other case law points in your direction. Doesn't that case law point against you? That case law- No, it points to only one facet of this discussion today. It points to the differing punishments issue. And, yes, at times the charging only matters if there's a differing punishment. But differing punishments isn't the be-all and end-all of the determination of elements versus means. But, again, the punishments determine what's an element, right? I mean, that's what we've learned from all these cases from the Supreme Court is the Sixth Amendment regards as an element any fact whose necessary proof- whose proof is necessary to determine a punishment becomes an element, right? Yes, but punishments aren't- Differing punishments is not the only way to prove something that's an element. That's only one way. And you don't have the reverse. If you- the converse- So if differing punishments make it an element, the reverse is- doesn't hold true. If there's not differing punishments, you don't necessarily have a means. You know, that logic doesn't reverse back. It's like saying if you are a vegetarian, you like vegetables and fruit. But the reverse isn't true. Like, if you're not a vegetarian, you do not like vegetables and fruit. I like vegetables and fruit and also like steak. Well, to use the statute, I think I follow what you're saying is that if someone was charged with the highest violation of the New Jersey statute and said, you have 10 kilograms of heroin. And then later they said, well, we want to switch it to 10 kilograms of cocaine. It's fine because either way, it was going to trigger the higher penalty. So those- to the extent those two are interchangeable, they're means within one unified element. They're not necessarily means in the mathist sense of means. They are means in the sense of for purposes of what is proper for amending a complaint, what gives that defendant notice and opportunity to defend against the charge it matters. But it doesn't get to the- it doesn't necessarily answer that endpoint question. You haven't even gotten to- you talked about the statute and the case law, but we haven't even talked about the jury instructions and the peak at the charge of that. I know we've kept you over, but maybe you can take 30 seconds to add something to the analysis. Okay. It does add to the analysis what the jury instructions and the peak at Mr. Smith's record of conviction do. They confirm that this- that the particular drug is an element. They don't- they certainly don't contradict. The jury instruction lists these are the elements. One of the elements is, you know, insert particular, you know, I think a specific controlled substance, and then it calls it an element, and that has to be proven by the jury. And then you look at Mr. Smith's record of conviction. He was charged with just cocaine, and the judgment of conviction specified cocaine, even though it didn't affect his ultimate penalty. But you needed to know cocaine that he was a second degree opposed to the third degree, which is only a small amount of marijuana. So I do think those are other pieces of evidence that support the divisibility analysis. You know, the divisibility analysis is- I apologize if I keep going, but it is, you know, you're a detective, and these are the pieces of evidence. You know, everyone wishes the statute just says it, or there's a state Supreme Court decision like in Mathis that tells you one way or the other. But when you don't have that, you look to the- you look to the statutory- well, you can get out of the statutory structure. You look to the case law, and the case law here shows that the particular drug creates a legal consequence, and that legal consequence makes it an element, and thus divisible. I thank you, Your Honors, for all that time. Thank you. We'll hear rebuttal. Thank you, Your Honors. I'd like to make four points in response to the government's argument, if I may. First, just regard briefly to that peak of the record question. We would say that a peak of the record is not necessary here because the state law is clear, but even if a peak of the record were necessary, certainly the court would want to look at the indictment here. The indictment does specify- it says that Mr. Smith was convicted of namely and then the name of a drug. It also says namely and then the name of a park, and it's pretty clear, I think, that the identity of the particular park where Mr. Smith's conduct occurred is not an element of the offense. The statute isn't divisible in that way. And in addition, the jury instructions, which the government further points to, the jury instructions here are just like those that this court analyzed in Harbin. They do have a blank there where the drug is to be filled in, but as the court noted in Harbin, that could be filled in with multiple drugs, and we know that that does occur. Secondly, Section 7.1 is not divisible. But we know that it does occur, so his response to the cases you cite is to say that it's up front and that these are all guilty plea cases. Do we have a case where it's submitted to the jury and it says you can say it's heroin or cocaine? I would point the court to the State v. Gibson case, which is a conviction for I believe it's heroin and or cocaine, and also the State v. Hester case, which I believe is a conviction for cocaine and heroin in the same count. It relevantly also- the New Jersey law is settled that two separate offenses cannot be charged in the same kind of an indictment. It's impermissibly duplicitous. So if what the government is saying is true, that conviction shouldn't have stood. So you're saying even the cases where it ends up being a guilty plea and he's describing it as notice, you're saying if those describe alternative violations, it would be an impermissible indictment? Certainly in the case of a conviction, a conviction at trial, it wouldn't stand. I think it's also true for a plea, yes. Can I ask you the same question I asked the government's counsel? What if at the end of this we are left hopelessly baffled as to what New Jersey law says? We find some cases pointing in your direction, the government has some cases pointing in their direction. What in your view does a court like us do? Right. So first of all, Your Honor, it's my understanding that the New Jersey Supreme Court wouldn't accept a certified question here. They only accept questions from the Third Circuit per their own rules. So in this circumstance- This is very unfriendly. Unfortunate, I agree. But in this circumstance, we would say that what the legal standard under Mathis is, is that the elements have to be able to be shown with certainty. The court would have to know with certainty that these things are elements of the statute in order to find divisibility. If I could continue, the next point is that Section 7.1 is not divisible because it cross-references only Section 5A, as we've already stated, and not the entirety of Section 5. That was a deliberate choice. We know that from the official commentary to Section 7, the legislative history documents. Section 7 is identical in this respect to 7.1. The New Jersey legislature deliberately chose not to incorporate differentiated punishments, which would be Section 5B, such that 7.1 would be a second-degree offense across the board. And that's in the legislative history, which the New Jersey courts use as authoritative evidence in answering statutory interpretation questions. The purpose of the legislature here was to increase the liability of someone who possesses drugs with intent to distribute if there is more than one drug. But the explanation for that is that the unit of prosecution under this statute is each drug possessed. It's not the case that a single act could be punished multiply. It's that the legislature has defined the possession of each of those individual drugs as separate acts. One more point, Your Honors, would be that we acknowledge that under Mathis, different punishments are— So even if it's a deliberate choice that they only reference subsection A, it does seem like what they envisioned was there would always be a charge for 35-5, and then 7.1 would accompany that charge, right? We have here the odd instance that he just pleads guilty to the 7.1 count and not to the 35-5 count. But in the—or normal case that the legislature envisioned, you would charge and prove both counts, right? Your Honor, I don't know that that's what the legislature necessarily envisioned. I think—so what we know about Section 7.1 and its relationship to 5 is it's not as simple as one being a lesser included of the other. If that were its intent, New Jersey could have designed the statute such that it just doubled the punishment of any of the 5B subsections. That's exactly what happens in Section 8 of the same title, which is the drug distributions to minors statute. It doubles the punishment across the board, so presumably would incorporate to the extent there's divisibility in 5B, it would be brought in. But Section 7.1 levels the punishment to a second-degree offense across the board. It's not even necessarily higher than what you would get under 5B because 5B can be a first-degree offense. 7.1 is a second-degree offense. So it's not as simple as higher offense, lesser included. They're separate offenses. So what—so since you—so what do you think the legislature was doing by making it a separate offense as opposed to making it an enhancement within 35-5? We think the legislature's intent was to make it easier for prosecutors in New Jersey to obtain a conviction for this type of conduct that they regarded as undesirable, which is hate conduct in a drug-free zone. The legislature's intent was to create drug-free zones, and the way that it went about that was by creating this statute. You could have done that by adding—by just adding a section to 35-5 that just says if you do all of this, the foregoing in a drug-free zone, you get this enhanced penalty. Precisely, Your Honor. And you're saying if they did that, then the statute would be divisible because it would be all part of 35-5. But because they did it in a separate section and made it a separate offense, all of a sudden it's not divisible. It's a generic offense. I don't think it's because it's in a separate section, Your Honor. I think it's because the statute relieves prosecutors of the requirement they would have under 5B to prove which subsection it falls under. 7.1, by virtue of being a separate statute, doesn't have that requirement. The prosecutor could charge multiple drugs in the alternative— Do prosecutors in New Jersey just charge 7.1 without an accompanying 35-5 charge? I'm not aware of a specific instance of that happening, Your Honor, but I don't see any reason why it couldn't happen under the law. And moreover, what we have here is a conviction for just 7.1. Well, we have a guilty plea. He's charged with both, but he pleads guilty just to 7.1. That's correct, Your Honor. The other charges were dismissed. If I could move on, Your Honors. We acknowledge that under Mathis, different punishments are sufficient but not necessary to show divisibility, as the government has continued to say. That said, we would still need indication from the text of the statute or the case law that there is divisibility here, and there is none. On its face, the statute refers solely to a controlled dangerous substance. That's 7.1 and also 5A, a controlled dangerous substance. That's exactly like the statute this court analyzed in Harbin. It's unlike, for example, the statute the court analyzed in Cherry, which did have at least two discrete alternatives for a violation. And that's what allowed the court to find divisibility there. Moreover, the case law, I'd like to draw the court's attention to the State v. Williams case, which we cite in our brief, which shows that in New Jersey, the drug, the identity of the drug can be amended within the indictment without requiring re-indictment. And if it were an element of the offense, that would not be permissible. That's an established principle under New Jersey law. All the government has, to the contrary, is the Jordan case, which as we've explained, all that case shows is the legislature's intent to allow multiple punishments, which it enacted through the definition of the unit of prosecution. And just one last final point, Your Honors. It's not particularly unusual, even, that a conviction under Section 5 could perhaps be an aggregated felony in some cases, whereas one under Section 7.1 is not. And that's for the reason that I described to Your Honors previously, that Section 5 is not a lesser included offense of Section 7.1. What the legislature in New Jersey did for Section 7.1 is it borrowed Section 5A's definition of the unit of prosecution for the forbidden conduct and added a locational element to make an entirely separate crime, a second degree offense without any requirement to prove the precise drug or amount. In that respect, it's exactly like the statute that this Court discussed in Rackena where prosecutors were not required to show the individual drug if it wasn't relevant to the ultimate punishment. And in the Court's decision in Rackena, it cited Harbin for that proposition. To the extent that there may be consequences that do appear odd in some cases because of individual prosecutors charging decisions, that's simply how the categorical approach works. It's a logical consequence of our federal system in which the federal and state legislatures legislate separately and have their own purposes. And we know that the New Jersey legislature here had its own purpose. The New Jersey legislature knew what it was doing when it designed this statute. It purposefully made it easier to prosecute drug activity in these drug-free zones by making it unnecessary to prove the precise type or quantity of the drug. And this Court should not needlessly cast doubt on those legitimate prosecutions under Section 7.1 which advance the legitimate purposes of the New Jersey legislature. And for these reasons, the statute is indivisible and Mr. Smith is statutorily eligible to apply for cancellation of removal. Thank you, Your Honors. Thank you all. Extremely well done. A very thorough explication of New Jersey law. Excellent advocacy, and we'll take the case under advisory.